**NOT FOR PUBLICATION**

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHARLES WILLIS, | : |
| Plaintiff, | : Civ. No. 21-19403 (GC) (TJB) |
| v. | : |
| COUNTY OF MERCER, et al., | : **OPINION** |
| Defendants. | : |

**CASTNER, District Judge**

**I.    INTRODUCTION**

Plaintiff, Charles Willis ("Plaintiff" or "Willis"), is a pretrial detainee at the Mercer County Correctional Center ("MCCC") in Trenton, New Jersey. He is proceeding *pro se* with a civil rights Complaint filed pursuant to 42 U.S.C. § 1983. (*See* ECF 1). This Court previously granted Plaintiff *in forma pauperis* status. (*See* ECF 2).

The allegations of the Complaint must be screened pursuant to 28 U.S.C. § 1915(e)(2)(B) to determine whether they are frivolous or malicious, fail to state a claim upon which relief may be granted, or whether the allegations seek monetary relief from a defendant who is immune from suit. For the following reasons, Plaintiff's Complaint shall proceed in part.

**II.    FACTUAL AND PROCEDURAL BACKGROUND**

The allegations of the Complaint shall be construed as true for purposes of this screening Opinion. Plaintiff names the following as Defendants in his Complaint:

1. County of Mercer

2. Brian Hughes – County Executive Mercer County

3. Charles Ellis – Warden MCCC

4. MCCC Deputy Warden Paris

5. Gary Britton – Chief Internal Affairs MCCC

6. Jane/John Doe – Health Services Administrator MCCC

7. Doctor/Nurse Practitioner Jane Doe – MCCC

8. Nurse(s) Jane Doe 1-10 MCCC

9. Nurse Josyane Sechaud – MCCC

10. Nurse Stephanie Zdanowski – MCCC[1]

Plaintiff sues Defendants in their official and individual capacities, except for the County of Mercer which is sued only in its official capacity. (*See* ECF 1 ¶ 14). Plaintiff's Complaint raises several different and distinct claims related to his time spent as a pretrial detainee at MCCC. In December 2020, Plaintiff alleges he submitted administrative grievances for the following reasons:

1. Being housed in deplorable living conditions at MCCC without being provided cleaning supplies;

2. Being housed around inmates who were suffering from health issues; and

3. Having sick call slips not answered or reviewed.

(*See id.* ¶ 15).

On January 13, 2021, Defendant Zdanowski diagnosed Plaintiff with COVID-19. (*See id.* ¶ 16). Plaintiff states prior to this date, MCCC's medical department refused to provide COVID-19 tests. (*See id.*). Plaintiff next alleges that on February 2, 2021, Defendant Sechaud purposefully

---

[1] For purposes of this Opinion, Defendants the County of Mercer and Defendant Hughes shall be referred to as the "County Defendants." Defendants Ellis, Paris and Britton shall be referred to collectively as the "Corrections Defendants." Finally, Defendants Health Care Administrator Jane/John Doe, Doctor Nurse Practitioner Jane/John Doe, Nurse(s) Jane Does 1 through 10; Sechaud and Zadanowski shall be referred to collectively as the "Medical Defendants."

2

delayed treatment until it was ordered that Plaintiff receive treatment at St. Francis Medical Center in Trenton, New Jersey. (*See id.*).

Plaintiff states the County and Corrections Defendants were aware of these incident(s) based on the numerous written and verbal complaints from Plaintiff and other pretrial detainees/inmates. (*See id.* ¶ 17). Plaintiff further alleges that these Defendants have blatantly ignored these grievances. (*See id.*).

Plaintiff states he suffered injuries due to Defendants' inaction related to COVID-19. This includes Plaintiff contracting COVID-19, Plaintiff's kidney shutdown, causing Plaintiff to undergo blood transfusions as well as causing problems urinating and the development of skin rashes. (*See id.* ¶ 19). Plaintiff states he eventually was treated for his ailments at St. Francis Medical Center before being sent back to MCCC. (*See id.*).

Plaintiff alleges upon his return to MCCC from the hospital that his cell had mold and that correctional officers would not provide cleaning supplies nor would staff clean his cell. (*See id.*). Plaintiff also notes that there was mold in the showers and that inmates were forced to shower from the sink for months because showers were inoperable. (*See id.* ¶ 20).

Next, Plaintiff complains that MCCC is understaffed which creates a dangerous living environment for inmates because officers are unable to monitor all areas properly. (*See id.* ¶ 21). Plaintiff states the County and Corrections Defendants are aware of inmates who have a propensity for violence who are placed around inmates without such a propensity. (*See id.* ¶ 22). Plaintiff explains this creates oppressive situations where inmates are assaulted and abused by other inmates. (*See id.*).

Plaintiff claims the County and Corrections Defendants have an unwritten policy/practice/custom of not investigating complaints made by inmates at MCCC nor allowing

corrective measures. (*See id.* ¶ 23). Furthermore, Plaintiff states Defendants Doctor Nurse Practitioner Jane Doe, Health Service Administrator and Nurses Jane Does 1-5 have an unwritten pattern/practice/policy/custom of not investigating complaints by MCCC inmates nor taking corrective measures. (*See id.* ¶ 24).

Plaintiff raises nine counts in his Complaint. Plaintiff's first three counts assert claims under the First, Eighth and Fourteenth Amendments to the United States Constitution. (*See id.* ¶¶ 27-29). Plaintiff's remaining counts are brought pursuant to New Jersey constitutional and statutory state law. (*See id.* ¶¶ 30-35).

Plaintiff seeks injunctive relief and monetary damages. (*See id.* ¶¶ 38-40).

### III.   LEGAL STANDARD

Under the Prison Litigation Reform Act, Pub.L. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (Apr. 26, 1996) ("PLRA"), district courts review complaints in civil actions in which a plaintiff is proceeding *in forma pauperis*. *See* 28 U.S.C. § 1915(e)(2)(B). The PLRA directs a court to *sua sponte* dismiss any claim that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B).

"The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)). That standard is set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). To survive a court's screening for failure to state a claim, the complaint must allege 'sufficient factual matter' to show that the claim is facially plausible. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210

(3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). "[A] pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

*Pro se* pleadings are liberally construed. *See Haines v. Kerner*, 404 U.S. 519 (1972). Nevertheless, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim," *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

In this case, Plaintiff seeks relief in part under 42 U.S.C. § 1983. A plaintiff may have a cause of action under § 1983 for certain violations of constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983. Thus, to state a claim for relief under § 1983, a plaintiff must allege first, the violation of a right secured by the Constitution or laws of the United States, and second, that the alleged deprivation was committed or caused by a person acting under color of state law. *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) (citations omitted); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).

## IV. DISCUSSION

Plaintiff's allegations can be separated into six legal categories as follows:

1. Deliberate indifference to Plaintiff's serious medical needs;

2. MCCC's conditions of confinement;

3. Failure to protect;

4. Access to courts[2];

5. Supervisory liability; and

6. State law claims.

Each of these claims are considered in turn.

### A. Deliberate Indifference to Plaintiff's Serious Medical Needs

Plaintiff alleges deliberate indifference to his serious medical needs related to contracting COVID-19 and his subsequent treatment. "In order for liability to attach under [§ 1983] a plaintiff must show that a defendant was personally involved in the deprivation of his federal rights." *Fears v. Beard*, 532 F. App'x 78, 81 (3d Cir. 2013) (citing *Rode v. Dellaciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). "[L]iability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (citation omitted).

Plaintiff's claims for deliberate indifference to his serious medical needs are analyzed under the Fourteenth Amendment as Plaintiff is a pretrial detainee. *See Tapp v. Brazill*, 645 F. App'x 141, 145 n.4 (3d Cir. 2016). To allege a Fourteenth Amendment violation, a pretrial detainee must allege that his conditions amounted to punishment. *See Bell v. Wolfish*, 441 U.S. 520, 538 (1979).

---

[2] Plaintiff lists "access to courts" in Count One of his Complaint. (*See* ECF 1 ¶ 27).

Punishment has both a subjective and an objective component – the objective component asks whether the deprivation was sufficiently serious and the subjective component asks whether the defendant acted with a sufficiently culpable state of mind. *See Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). While the Fourteenth Amendment controls this claim, the Eighth Amendment's "deliberate indifference" standard provides a guide to what, at a minimum, is owed to pretrial detainees. *See Tapp*, 645 F. App'x at 145 n.4 (citing *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581-82 (3d Cir. 2003)); *see also Reavis v. Hicks*, No. 19-21711, 2020 WL 3034619, at *3 (D.N.J. June 5, 2020) (citation omitted).

> For the delay or denial of medical care to rise to a violation of the Eighth Amendment's prohibition against cruel and unusual punishment, a prisoner must demonstrate "(1) that defendants were deliberately indifferent to [his] medical needs and (2) that those needs were serious." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Deliberate indifference requires proof that the official "knows of and disregards an excessive risk to inmate health or safety." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). We have found deliberate indifference where a prison official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a nonmedical reason; or (3) prevents a prisoner from receiving needed or recommended treatment." *Rouse*, 182 F.3d at 197. Deference is given to prison medical authorities in the diagnosis and treatment of patients, and courts "disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment . . . (which) remains a question of sound professional judgment." *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) (quoting *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977)). Allegations of negligent treatment or medical malpractice do not trigger constitutional protections. *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976).

*Pierce v. Pitkins*, 520 F. App'x 64, 66 (3d Cir. 2013). Deliberate indifference can also be found "where the prison official persists in a course of treatment in the face of resultant pain and risk of permanent injury." *See McCluskey v. Vincent*, 505 F. App'x 199, 202 (3d Cir. 2012) (internal

quotation marks and citation omitted). "A medical need is serious if it 'has been diagnosed by a physician as requiring treatment,' or if it 'is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" *See Mitchell v. Beard,* 492 F. App'x 230, 236 (3d Cir. 2012) (*quoting Atkinson v. Taylor*, 316 F.3d 257, 272-73 (3d Cir. 2003) (quoting *Monmouth Cnty. Inst. Inmates v. Lanzaro,* 834 F.2d 326, 347 (3d Cir. 1987))).

Plaintiff alleges Defendants Zdanowski and Sechaud were involved in providing him medical care. Zdanowski diagnosed Plaintiff with COVID-19. Providing Plaintiff with a COVID-19 diagnosis, without any further allegations regarding Zdanowski's actions (or lack thereof), does not though amount to deliberate indifference. *Cf. McKinney v. Hemsley*, No. 14-3564, 2019 WL 1293719, at *13 (D.N.J. Mar. 20, 2019) (noting in part that diagnosis in and of itself does not constitute deliberate indifference).

Nevertheless, Plaintiff alleges that Defendant Sechaud on February 2, 2021 "delayed treatment." As indicated above, delaying treatment can give rise to a deliberate indifference claim. *See Rouse,* 182 F.3d at 197. However, Plaintiff's allegations related to Sechaud's "delayed treatment" is conclusory and does not state a claim with facial plausibility. While Plaintiff alleges that he suffered injuries including kidney shutdown, blood transfusions, problems urinating, and skin rashes, the Complaint provides no context regarding Sechaud's (or any other Defendant's) role with supporting factual allegations as to how Sechaud "delayed treatment" causing these injuries. *See, e.g. Hernandez v. Link*, No. 18-2912, 2019 WL 7020113, at *4 (E.D. Pa. Dec. 20, 2019) (conclusory allegation that defendant delayed treatment does not shield deliberate indifference claim from dismissal) (citation omitted). Thus, Plaintiff fails to state a claim for deliberate indifferent to his serious medical needs in his Complaint against Defendants Zdaanowski and Sechaud.

Plaintiff may also be attempting to bring his deliberate indifference to his serious medical needs claim against the Corrections Defendants, Defendant Hughes and the other unnamed Medical Defendants based upon MCCC's purported failure to test for COVID and his subsequent contraction of the virus and complications arising therein.[3] In *Hope v. Warden York Cty. Prison*, 972 F.3d 310, 325 (3d Cir. 2020), immigration detainees alleged that due to their ages and medical conditions, their confinement at county jails during the COVID-19 pandemic amounted to punishment and/or deliberate indifference to their serious medical needs. Although the Third Circuit in *Hope* agreed that the detainees' particular vulnerabilities could be assessed in determining whether their conditions of confinement amounted to punishment, the court rejected the detainee's arguments that exposure to COVID-19 was per se unconstitutional and that the government must entirely eliminate the detainees' risk of exposure in order to comply with constitutional mandates. *See* 972 F.3d at 329.

Plaintiff does not state that he had a particular vulnerability to COVID such that his complaints about a lack of COVID testing in 2020 at MCCC and the surrounding protocols in place at MCCC amount to punishment under the Fourteenth Amendment. Furthermore, Plaintiff fails to state that the Defendants knew that he had a particular vulnerability to COVID and ignored that risk of serious harm. Thus, Plaintiff fails to state a direct deliberate indifference to his serious medical needs claim against Hughes, the Corrections Defendants and other unnamed Medical Defendants as well. *Accord Abner v. Ellis*, No. 21-15359, 2023 WL 17177838, at *6 (D.N.J. Nov. 23, 2022).

Plaintiff though may also be attempting to bring a claim against Hughes, the Correctional Defendants and the other unnamed Medical Defendants related to MCCC's COVID protocols (or

---

[3] To the extent Plaintiff is asserting a deliberate indifference to his serious medical needs claim against the County of Mercer, such a claim is discussed *infra*.

lack thereof) in their role as supervisors. Supervisory liability in a § 1983 action must be predicated upon personal involvement, not *respondeat superior. See Brown v. Deparlos*, 492 F. App'x 211, 214–15 (3d Cir. 2012) (citing *Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981)). There are two theories of supervisory liability applicable to § 1983 claims; they are: (1) "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations"; and (2) policymakers may also be liable under § 1983 "if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice[,] or custom which directly caused [the] constitutional harm.'" *See A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Del. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)). With respect to the second theory of liability, the plaintiff must show that "(1) existing policy or practice creates an unreasonable risk of constitutional injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice." *See Merring v. City of Carbondale*, 558 F. Supp. 2d 540, 547 (M.D. Pa. 2008) (citing *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989)).

Given that Plaintiff has failed to plead an underlying deliberate indifference to his serious medical needs claim, any argument for supervisory liability against the Defendants also does not state a claim. *See Talley v. Varner*, 786 F. App'x 326, 329 (3d Cir. 2019) ("Talley's claims of supervisory liability and conspiracy fail because, as noted by the District Court, there is no underlying constitutional violation.") (citations omitted). Thus, Plaintiff's deliberate indifference to his serious medical needs claim is dismissed without prejudice for failure to state a claim upon which relief may be granted.

B. Conditions of Confinement

This Court next construes Plaintiff's Complaint as asserting a claim related to his conditions of confinement while at MCCC. Most notably, Plaintiff complains about mold upon his return to MCCC from the hospital as well as unworkable and moldy showers. This Court construes Plaintiff raising this claim against both the County and Corrections Defendants.

As a pretrial detainee, Plaintiff's conditions of confinement claim, as noted above, are analyzed under the Fourteenth Amendment as opposed to the Eighth Amendment. *See Hubbard v. Taylor,* 538 F.3d 229, 231 (3d Cir. 2008) (explaining that Fourteenth Amendment applies to pretrial detainees' conditions of confinement claim). "The Constitution mandates that prison officials satisfy inmates' 'basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety.'" *Duran v. Merline,* 923 F. Supp. 2d 702, 719 (D.N.J. 2013) (quoting *Helling v. McKinney,* 509 U.S. 25, 32 (1993)) (remaining citation omitted). A plaintiff must allege that the defendant knew of and disregarded an excessive risk to plaintiff's health. *See Wilson v. Burks*, 423 F. App'x 169, 173 (3d Cir. 2011) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

In an almost identical action to the one Plaintiff is bringing by another pretrial detainee housed at MCCC at the same time as Plaintiff, this District Court permitted that plaintiff's conditions of confinement claim related in part to the mold/shower issues at MCCC to proceed past screening against many of the same Correctional Defendants Plaintiff raises in this action. *See Abner*, 2022 WL 17177838, at *4-5. Indeed, in *Abner*, the Court noted that at the early screening stage, it is plausible that the Correctional Defendants, who allegedly work at the facility, have knowledge of the mold issues at MCCC. *Abner*'s reasoning is persuasive such that this Court will permit Plaintiff's conditions of confinement claim to proceed past screening as to the Corrections Defendants.

However, this Court will dismiss without prejudice Plaintiff's claims against Hughes. As noted above, the Plaintiff in *Abner* raised an almost identical complaint to the one Plaintiff brings in this action. In *Abner*, the Court noted as follows with respect to Defendant Hughes:

> It is not plausible, however, that County Executive Hughes would have personal knowledge that there is mold . . . at MCCC, or that he knew about the lack of operable showers . . . and cleaning supplies, absent additional factual support. The conditions of confinement claims are dismissed without prejudice as to Hughes.

2022 WL 17177838, at *5. This Court agrees with the Court in *Abner* as to Plaintiff's claims against Hughes related to the conditions of his confinement at MCCC. Accordingly, Plaintiff's conditions of confinement claim against Hughes is dismissed without prejudice for failure to state a claim upon which relief may be granted.

C. Failure to Protect

Next, Plaintiff raises a failure to protect claim related to inmate-on-inmate violence at MCCC. To state a claim against a prison official for failure to protect, "the inmate must plead facts that show (1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to his health and safety, and (3) the official's deliberate indifference caused him harm." *Bistrian v. Levi,* 696 F.3d 352, 367 (3d Cir. 2012) (citing *Farmer v. Brennan,* 511 U.S. 825, 834 (1994); *Hamilton v. Leavy,* 117 F.3d 742, 746 (3d Cir. 1997)). "Deliberate indifference" is a subjective standard whereby "'the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety.'" *Id.* (citing *Beers-Capitol v. Whetzel,* 256 F.3d 120, 125 (3d Cir. 2001)). As noted by the Third Circuit:

> [i]t is not sufficient that the official should have known of the risk. [*Beers Capitol,* 256 F.3d at] 133. A plaintiff can, however, prove an official's actual knowledge of a substantial risk to his safety "in the usual ways, including inference from circumstantial evidence."

12

> *Farmer,* 511 U.S. at 842. In other words, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.*

*Bistrian,* 696 F.3d at 367; *see also Paulino v. Burlington Cty. Jail,* 438 F. App'x 106, 109 (3d Cir. 2011) (noting that state of mind requirement for prisoner claims of deliberate indifference applies to pretrial detainee claims) (citation omitted); *see also Miller v. Ricci,* No. 11-859, 2011 WL 1655764 (D.N.J. Apr. 28, 2011) ("To plead a[ ] . . . failure to protect claim a plaintiff must plead facts raising a plausible inference of . . . the defendants' deliberate indifference to that particular risk of harm").

While Plaintiff alludes to inmate-on-inmate assault, he fails to plead any cause of harm to himself. As such, Plaintiff fails to state a failure to protect claim. *See, e.g., Myer v. Giroux,* No. 15-71, 2018 WL 6831147, at *8 (W.D. Pa. Dec. 28, 2018) (Plaintiff failed to establish failure to protect claim where record was too speculative and lacked any evidence of physical harm or assault). Thus, this claim will also be dismissed without prejudice for failure to state a claim.

D. <u>Access to Courts</u>

Plaintiff next alludes to a violation of his First Amendment right to access to courts. "Under the First and Fourteenth Amendments, prisoners retain a right of access to the courts." *Monroe v. Beard,* 536 F.3d 198, 205 (3d Cir. 2008) (citing *Lewis v. Casey,* 518 U.S. 343 (1996)). "Where prisoners assert that defendants' actions have inhibited their opportunity to present a past legal claim, they must show (1) that they suffered an 'actual injury'—that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other" remedy that may be awarded as recompense "for the lost claim other than in the present denial of access suit." *Id.* (citing *Christopher v. Harbury,* 536 U.S. 403, 415, (2002)). Thus, to satisfy the requisite pleading requirements, "[t]he complaint must describe the underlying arguable claim well enough

13

to show that it is 'more than mere hope,' and it must describe the 'lost remedy.'" *Id.* at 205–06 (citing *Christopher*, 536 U.S. at 416–17) (footnote omitted). Indeed, in the context of alleging the underlying claim that the plaintiff was prevented from pursuing, "the complaint should state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a), just as if it were being independently pursued[.]" *Christopher*, 536 U.S. at 417 (footnote omitted).

Plaintiff fails to adequately plead an access to courts claim. He does not assert he has been prevented from presenting a past legal claim. Certainly, Plaintiff does complain about a lack of response to various grievances he has submitted while detained at MCCC. However, this in and of itself is insufficient to state a constitutional claim. Indeed, "[t]he law does not recognize a stand-alone [constitutional] claim regarding access to the prison grievance program." *Harris v. Wetzel*, 822 F. App'x 128, 130 (3d Cir. 2020) (citations omitted). Accordingly, this claim too will be denied without prejudice for failure to state a claim upon which relief may be granted.

E. Defendant County of Mercer – *Monell*

As noted *supra*, Plaintiff has also named the County of Mercer as a Defendant. To hold a municipality liable under § 1983, a plaintiff must demonstrate that his rights were violated by a policy or custom of the municipality and that such policy or custom has been "the moving force" behind the deprivation of his constitutional rights. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). Municipal policy generally involves a "statement, ordinance, regulation, or decision officially adopted and promulgated by [a local governing] body's officers." *Id.* at 690. A municipal custom, although lacking the formal approval of a policy, refers to those official practices which are "so permanent and well settled as to constitute . . . the force of law." *Id.* at 691.

> An individual's conduct implements official policy or practice under several types of circumstances, including when (1) the individual

>   acted pursuant to a formal government policy or a standard operating procedure long accepted within the government entity, (2) the individual himself has final policy-making authority such that his conduct represents official policy, or (3) a final policy-maker renders the individual's conduct official for liability purposes by having delegated to him authority to act or speak for the government, or by ratifying the conduct or speech after it has occurred.

*Hill v. Borough of Kutztown*, 455 F.3d 225, 245 (3d Cir. 2006) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478-84, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986)) (other citations omitted).

The only underlying constitutional violation that Plaintiff has sufficiently alleged relates to the mold/inoperable showers at MCCC as described *supra*. However, Plaintiff fails to allege with any facial plausibility that these conditions of confinement at MCCC resulted from a policy or custom of the County of Mercer. Thus, Plaintiff's federal constitutional claims against the County of Mercer shall be dismissed without prejudice for failure to state a claim.

F. <u>State Law Claims</u>

In Counts 4 and 5, Plaintiff asserts that the Defendants have violated his rights under the New Jersey Constitution to be free from cruel and unusual punishment as well as the right to file a grievance. The New Jersey Civil Rights Act ("NJCRA") "was modeled after [ ] § 1983[ ] and creates a private cause of action for violations of civil rights secured under the New Jersey Constitution[ ]." *Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443 (D.N.J. 2011). When interpreting the NJCRA, "[c]ourts have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart." *Chapman v. New Jersey*, No. 08-4130, 2009 WL 2634888, at *3 (D.N.J. Aug. 25, 2009). Given the identical nature of the analysis with respect to Plaintiff's claims under the NJCRA as it relates to his federal claims, this Court will permit Plaintiff's claims under the

New Jersey constitution to proceed against the Corrections Defendants as related to Plaintiff's conditions of confinement allegations only.

In Count Six, Plaintiff raises a claim under state law against the Defendants for intentional infliction of emotional distress. (*See* ECF 1 at 7). To make out a common law claim for intentional infliction of emotional distress, a plaintiff must establish intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe. *See Leang v. Jersey City Bd. of Educ.*, 969 A.2d 1097, 1115 (N.J. 2009). A fourth required element requires "the distress must be so severe that no reasonable person could be expected to endure it. Severe emotional distress refers to any type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." *See Aly v. Garcia*, 754 A.2d 1232, 1236 (N.J. Super. App. Div. 2000) (citing *Taylor v. Metzger*, 152 N.J. 490, 515 (1998)). Indeed, "[i]t is not enough to establish that a party is acutely upset by reason of the incident. In order to be actionable, the claimed emotional distress must be sufficiently substantial to result in physical illness or serious psychological sequelae." *Id.* at 1236-37 Here, Plaintiff has not properly pleaded the elements of an intentional infliction of emotional distress claim. Thus, this claim is dismissed without prejudice for failure to state a claim upon which relief may be granted. *Accord Abner*, 2022 WL 17177838 at *8 (finding in virtually identical complaint that Plaintiff failed to properly plead the elements of an intentional infliction of emotional distress claim).

In Count Seven, Plaintiff cites to N.J. Stat. Ann. § 2C:12-2 to argue that the Defendants are liable for reckless endangerment. Plaintiff cites to and relies on the New Jersey Criminal Code to bring this claim. However, Plaintiff cannot bring a private right of action against the Defendants under New Jersey's Criminal Code. *See, e.g., Brown v. Progressive Specialty Ins. Co.*, 763 F. App'x. 146, 147 (3d Cir. 2019) (state law criminal statutes neither authorize civil actions nor create

civil liabilities); *R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co.*, 773 A.2d 1132, 1142 (N.J. 2001) ("New Jersey courts have been reluctant to infer a statutory private right of action where the Legislature has not expressly provided for such an action.). Thus, this claim is also dismissed without prejudice for failure to state a claim upon which relief may be granted.

Finally, in Counts Eight and Nine, Plaintiff seeks relief under state law for negligence. Under New Jersey law, "[t]o sustain a cause of action for negligence, a plaintiff must establish four elements: (1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages." *Townsend v. Pierre*, 110 A.3d 52, 61 (N.J. 2015) (internal quotations and citations omitted). "It is the obligation of the plaintiff to prove each element." *Coleman v. Martinez*, 254 A.3d 632, 642 (N.J. 2021). This Court construes two potential areas where Plaintiff *may* have alleged enough to warrant his negligence claims proceeding beyond the Court's initial screening. Plaintiff's state law negligence claims against the Corrections Defendants and Jane/John Doe Health Care Administrator with respect to the medical care/lack of COVID testing as well as his claim against the Corrections Defendants for negligent conditions of confinement claim while housed at MCCC shall proceed.

## V. CONCLUSION

For the foregoing reasons, Plaintiff's Complaint shall proceed in part. Plaintiff's constitutional and NJCRA condition of confinement claims against the Corrections Defendants shall proceed. Additionally, Plaintiff's state law negligence claims against the Corrections Defendants and Jane/John Doe Health Care Administrator with respect to the medical care/lack of COVID testing as well as his claim against the Corrections Defendants for negligent conditions of confinement claim while housed at MCCC shall proceed. An appropriate Order will be entered.

DATED: May 15, 2023

_____
GEORGETTE CASTNER
United States District Judge